# Hamblen Family Irrevocable Trust

THIS TRUST AGREEMENT forming the "HAMBLEN FAMILY IRREVOCABLE TRUST," is made and entered into this 27th day of September, 1999, between CHARLES RANDALL HAMBLEN and JANET HAMBLEN, as Grantors, and LONNA HARRIS and SARA ANN JONES SMITH, as Co-Trustees (together with all other additional or successor Trustees hereinafter appointed collectively referred to as the "Trustees").

The Grantors have this day transferred to the Trustees the cash sum of Ten Dollars ($10) as the initial corpus of the HAMBLEN FAMILY IRREVOCABLE TRUST. Such cash and any other property that may be received by the Trustees hereunder shall be held and disposed of upon the following terms and conditions.

## ARTICLE I.

The Grantors expressly acknowledge that they have been advised that they may retain unlimited power to revoke, amend or alter the terms and conditions of this Trust Agreement; but nevertheless, they desire to and hereby do expressly waive all right and power to revoke, amend or alter any of the terms or conditions of this Trust Agreement. This Trust is and shall be irrevocable, and the Grantors shall have no right, title or interest in or power, privilege or incident of ownership in regard to any property held under this Trust Agreement, whether income or corpus, and shall have no right to alter, amend, revoke or terminate this Trust Agreement or any provision hereof.

EXHIBIT " A " PG 1 OF 34

ARTICLE II.

Upon the death of the last of the Grantors to die (hereinafter referred to as the "Surviving Grantor"), the Trustees, in their sole discretion, may either collect the net proceeds of any insurance on the Grantors' lives that are payable to the Trustees hereunder and hold such proceeds as part of the corpus of the Trust estate, or exercise any optional method of settlement available to them. Payment to and the receipt by the Trustees of the life insurance proceeds payable upon the Surviving Grantor's death shall be a full discharge of the liability of any insurance company, which need not take notice of this instrument or see to the application of any payment of any such death proceeds without indemnification satisfactory to it for any resulting expense. The Trustees may decline to inquire whether the Trustees or the Trust have been designated beneficiaries of any insurance policy or other death benefit, and the Trustees need not act with respect to such policies until receipt of written notice that the Trustees or the Trust are beneficiaries. The Trustees need not engage in litigation to enforce the payment of any policy without indemnification satisfactory to the Trustees for any resulting expense.

ARTICLE III.

For all purposes of this Trust Agreement, the following terms shall have the following meanings:

A.    Grantors' "children": The Grantors' son, JUSTIN RANDALL HAMBLEN, and the Grantors' daughter, HALEY RENEE HAMBLEN, and any children born to or adopted by the Grantors after the date of execution of this Trust Agreement.

EXHIBIT " A " PG 2 OF 34

-2-

Hamblen Family Irrevocable Trust (396.02)

B.    Grantors' "descendant" or "descendants": The Grantors' children (as herein defined) and their descendants, including all such descendants of the Grantors' children born or adopted after the date of the Grantors' execution of this Trust Agreement.

C.    Any reference to the "Code" shall in every instance refer to the Internal Revenue Code of 1986, as now or hereafter amended.

ARTICLE IV.

The initial corpus received contemporaneously with the execution of this Trust Agreement and all other property hereafter acquired by the Trustees, including all accumulated income, shall be held, administered and disposed of as hereinafter provided.

A.    Until the death of the Surviving Grantor, the Trust shall be maintained as a single trust fund and the Trustees shall distribute to or for the benefit of the Grantors' descendants all or any portion of the income and corpus of the Trust not needed to pay life insurance premiums on policies owned by the Trust as the Trustees may deem necessary or advisable for the education and maintenance in health and reasonable comfort of the Grantors' descendants. Any undistributed income of the Trust shall be accumulated by the Trustees and added to the corpus of the Trust.

B.    Upon the death of the Surviving Grantor, the Trustees shall divide the Trust property into equal, separate shares so as to provide one (1) share for each of the Grantors' children who is then living and one (1) share for each child of the Grantors who is not then living but has left descendants who are then living. The Trustees shall further divide each share allocated for a deceased child of the Grantors per stirpes among the then living descendants of such deceased child. Each share of the Trust property allocated to a then living child of the Grantors shall be held, administered and disposed of in a separate trust (hereinafter referred to as a "Child's Trust") as

-3-

Hamblen Family Irrevocable Trust (396.02)

EXHIBIT "A" PG 3 OF 34

provided in Paragraph C of this ARTICLE. Each share or per stirpes portion of a share of the Trust property allocated for a descendant of a deceased child of the Grantors (to be referred to herein as a "beneficiary") shall be held, administered and disposed of in a separate trust (hereinafter referred to as a "Descendant's Trust" as provided in Paragraph D of this ARTICLE. Separate books and records shall be kept for each Child's Trust and Descendant's Trust so created, but it shall not be necessary that physical division of the assets be made as to each such Child's Trust and Descendant's Trust.

C.    Each Child's Trust created hereunder shall be held, administered and disposed of as hereinafter provided.

1.    The Trustees shall distribute to or for the benefit of each child of the Grantors for whom a Child's Trust is created hereunder so much of the income and corpus of such child's Child's Trust as may be necessary or advisable for such child's education and maintenance in health and reasonable comfort. The Trustees shall also distribute to or for the benefit of such child's descendants so much of the remaining income and corpus of the Child's Trust for such child as may be necessary or advisable for the education and maintenance in health and reasonable comfort of such child's descendants. Any income not so distributed shall be accumulated and added to the corpus of each respective Child's Trust.

2.    Each Child's Trust shall terminate as to the child of the Grantors for whom such Child's Trust is created upon the earlier of the date when all of such Child's Trust shall have been so distributed or the date of the death of such child.

3.    If any child of the Grantors for whom a Child's Trust is created hereunder shall die before complete distribution of his or her Child's Trust, then upon such child's death, the

Hamblen Family Irrevocable Trust (396.02)

EXHIBIT " A " PG 4 OF 34

corpus of such Child's Trust as then constituted, including any undistributed income, shall be distributed to such of the surviving descendants of such child, in such proportions and subject to such terms, trusts and conditions as such child may appoint by specific reference to this power in the valid last Will of such child. Such limited power of appointment shall not be exercisable (i) in favor of the creditors of such child or his or her estate or the creditors thereof, (ii) for the purpose of discharging any legal obligation of such child or (iii) for the pecuniary benefit of such child. To the extent the foregoing limited power of appointment is not effectively exercised, then upon the death of each child of the Grantors for whom a Child's Trust is created hereunder, any undistributed income of such Child's Trust shall be distributed to his or her estate and the remaining corpus of such Child's Trust, as then constituted, shall be forthwith distributed to such child's then living descendants per stirpes, or, if none, then per stirpes to the then living descendants of the parent of such child which parent is a descendant of the Grantors, or, if none, then to the Grantors' then living descendants per stirpes, or if none, then as provided in ARTICLE V of this Trust Agreement; provided, however, that any portion otherwise distributable to a descendant of the Grantors for whom any property is then being held in a Child's Trust or Descendant's Trust under this Trust Agreement shall be added to such Child's Trust or Descendant's Trust, as the case may be; and provided, further, that if any portion shall become distributable to a person who has not attained the age of thirty-five (35) years for whom no property is then being held in a Child's Trust or Descendant's Trust under this Trust Agreement, then such portion shall immediately vest in such person but the Trustees shall retain possession thereof and shall hold, administer and dispose of such portion for the benefit of such person as a separate trust in accordance with the provisions of Subparagraphs D.1 through D.6 of this ARTICLE. The Trustees shall have, with respect to each such retained portion,

Hamblen Family Irrevocable Trust (396.02)

all of the power and discretion had with respect to any of the Descendant's Trusts established under this Trust Agreement.

4. Unless a Child's Trust shall be sooner terminated as provided above, then upon the date which is one (1) day prior to the later of (a) twenty-one (21) years after the death of the last to die of the Surviving Grantor and all of the Grantors' descendants who were alive at the time of execution of this Trust Agreement, or (b) ninety (90) years after the date of execution of this Trust Agreement, the interest of each child of the Grantors for whom a Child's Trust is created hereunder shall vest in such child, all of the remaining corpus and any undistributed income of such Child's Trust shall be distributed to such child and such Child's Trust shall terminate.

D. Each Descendant's Trust created hereunder shall be held, administered and disposed of as hereinafter provided.

1. The Trustees shall distribute to or for the benefit of the beneficiary thereof so much of the income and corpus of such Descendant's Trust as may be necessary or advisable for such beneficiary's education and maintenance in health and reasonable comfort. The Trustees shall also distribute to or for the benefit of such beneficiary's descendants so much of the remaining income and corpus of such beneficiary's Descendant's Trust as may be necessary or advisable for the education and maintenance in health and reasonable comfort of such beneficiary's descendants. Any income not so distributed shall be accumulated and added to the corpus of each respective Descendant's Trust.

2. The Trustees shall also distribute to or for the benefit of the beneficiary of each Descendant's Trust so much of the corpus thereof as the Trustees in their sole and absolute discretion deem advisable to enable such beneficiary to enter into a trade, business or profession, to

-6-


EXHIBIT " A " PG  6  OF 34

Hamblen Family Irrevocable Trust (396.02)

purchase or renovate a home, to marry or for any other purposes that the Trustees deem to be in the best interests of such beneficiary.

3.   At any time after the beneficiary has attained the following ages, he or she shall have the right to request the Trustees to distribute to him or her part or all of the following portions of the remaining corpus and undistributed income from his or her Descendant's Trust:

a)   After such beneficiary has attained the age of twenty-five (25) years, one-third (1/3) of the Descendant's Trust of such Beneficiary;

b)   After such beneficiary has attained the age of thirty (30) years, one-half (1/2) of the remainder of such Descendant's Trust [exclusive of any amount distributable at the age of twenty-five (25) years]; and

c)   After such beneficiary has attained the age of thirty-five (35) years, all of the remainder of such Descendant's Trust.

The Trustees shall distribute to or for the benefit of the beneficiary of each Descendant's Trust the portion or portions so requested in an amount determined by using the market value of the Descendant's Trust of such beneficiary at the time the Trustees receive the request for distribution.

4.   Each Descendant's Trust shall terminate as to the beneficiary thereof upon the earlier of the date when all of the Descendant's Trust of such beneficiary shall have been distributed as herein provided or the date of such beneficiary's death.

5.   If any beneficiary for whom a Descendant's Trust is created hereunder shall die before complete distribution of his or her Descendant's Trust, then upon such beneficiary's death, the corpus of such Descendant's Trust as then constituted, including any undistributed income (the

Hamblen Family Irrevocable Trust (396.02)

EXHIBIT " A " PG 7 OF 34

"Distributable Amount"), shall be distributed to such of the surviving descendants of such beneficiary, in such proportions and subject to such terms, trusts and conditions as such beneficiary may appoint by specific reference to this power in the valid last Will of such beneficiary. Such limited power of appointment shall not be exercisable (i) in favor of the creditors of such beneficiary or his or her estate or the creditors thereof, (ii) for the purpose of discharging any legal obligation of such beneficiary or (iii) for the pecuniary benefit of such beneficiary. To the extent the foregoing limited power of appointment is not effectively exercised upon the beneficiary's death, the Distributable Amount of the Descendant's Trust of such beneficiary, shall be forthwith distributed as follows: (a) to such beneficiary's then living descendants per stirpes or, if none, then (b) per stirpes to the then living descendants of the parent of such beneficiary which parent is a descendant of the Grantors, or, if none, then (c) such Distributable Amount shall be equally divided and distributed so as to provide one (1) share for each grandchild of the Grantors who is then living and one (1) share to be divided and distributed per stirpes among the then living descendents, if any, of any deceased grandchild of the Grantors, or, if none, then (d) to the Grantors' then living descendants per stirpes, or, if none, then (e) as provided in ARTICLE V hereof; provided, however, that any portion otherwise distributable to a descendant of the Grantors for whom any property is then being held in trust under this Trust Agreement shall be added to such trust; and provided, further, that if any portion shall become distributable to a person who has not attained the age of thirty-five (35) years for whom no property is then being held in trust under this Trust Agreement, then the Trustees shall retain possession thereof and shall hold, administer and dispose of such portion for the benefit of such person as a separate trust in accordance with the provisions of Subparagraphs D.1 through D.6 of this ARTICLE. The Trustees shall have, with respect to each such retained portion, all of the

-8-



Hamblen Family Irrevocable Trust (396.02)

power and discretion had with respect to any of the Descendant's Trusts established under this Trust Agreement.

6.      Unless a Descendant's Trust shall be sooner terminated as provided above, then upon the date one day prior to the later of (a) twenty-one (21) years after the death of the last to die of the Surviving Grantor and all of the descendants of the Grantors who were alive at the time of the execution of this Trust Agreement or (b) ninety (90) years after the date of execution of this Trust Agreement, the interest of the beneficiary of each Descendant's Trust shall vest in such beneficiary, all of the remaining corpus and any undistributed income of such Descendant's Trust shall be distributed to any such adult beneficiary or to the guardian or guardians of any such minor beneficiary, and such Descendant's Trust shall terminate.


## ARTICLE V.

Any share or portion of a share of any trust created hereunder that is not effectively disposed of under any other provision of this Trust Agreement shall go and be distributed one-half (1/2) to the heirs of each Grantor.  The identities and respective shares of the heirs of the Grantors shall be determined in all respects as if the deaths of the Grantors had occurred immediately following the happening of the event requiring distribution and according to the laws of Georgia then in force governing the distribution of the estate of an intestate.


## ARTICLE VI.

A.      Either Grantor or any other individual (hereinafter sometimes referred to as a "Donor") may, with the consent of the Trustees, at any time and from time to time prior to the division of the Trust corpus pursuant to Paragraph B of ARTICLE IV hereof, increase the corpus of

the Trust by adding thereto insurance policies, cash, securities or other property. Each such addition made to the Trust, including the initial contribution of Trust corpus, shall hereinafter be referred to as an "Addition." Each Addition shall be subject to the terms of this Agreement in the same manner and to the same extent as if it had been delivered to the Trustees by the Donor as part of the Trust estate at the time of the execution of this Agreement. Except for the property received by the Trustees as a direct result of the death of a Donor (including, but not limited to, life insurance, retirement plan proceeds or a testamentary bequest or devise of any property whatsoever), and subject to the limitations on withdrawals contained in Paragraph C of this ARTICLE, each Donee (as defined in Paragraph B of this ARTICLE) shall have the right to withdraw from the corpus of the Trust all or a portion of his or her Distributive Share (as hereinafter defined) of each Addition. A Donee's Distributive Share of an Addition shall be determined as follows:

1. If, contemporaneously with such Addition, the Donor delivers to the Trustees an instrument in writing designating the portion of such Addition (which may be designated as zero) subject to such Donee's withdrawal right (hereinafter referred to as a "Notice of Gift"), then the Distributive Share of such Donee with respect to such Addition shall be that portion of such Addition so designated by the Donor as subject to such Donee's withdrawal right.

2. If, contemporaneously with such Addition, the Donor does not deliver to the Trustees a Notice of Gift with respect to such Donee, then the Distributive Share of such Donee shall be equal to the lesser of (a) the then fair market value of such Addition, minus the Distributive Shares of any Donees with respect to such Addition whose Distributive Shares were specified pursuant to a Notice of Gift, which difference shall be divided by the total number of Donees other than the Donees with respect to such Addition whose Distributive Shares were specified pursuant

EXHIBIT " A " PG 10 OF 34        Hamblen Family Irrevocable Trust (396.02)

to a Notice of Gift; (b) the greater of Five Thousand ($5,000) Dollars or five (5%) percent of the then fair market value of the corpus of the Trust, reduced (but not below zero) by the amount of such Donee's withdrawal rights with respect to other Additions to the Trust during the calendar year of such Addition; and (c) the value of the then applicable gift tax annual exclusion under Code Section 2503(b) available with respect to such Donor (and such Donor's spouse, as the case may be, if such Donor notifies the Trustees that such Donor and his or her spouse will consent to split all gifts made during the calendar year of such Addition in accordance with Code Section 2513) and such Donee, taking into account any other Additions or gifts by the Donor (and/or his or her spouse, as the case may be) to such Donee reasonably known to the Trustees at the time of such Addition that qualify for the Code Section 2503(b) annual exclusion and that have been made during the calendar year of such Addition.

B.     For the purposes of this ARTICLE, the term "Donee" shall refer to, at the time of a particular Addition, each then living descendant of the Grantors.

C.     The following portions shall apply to the Donees' rights of withdrawal pursuant to Paragraph A of this ARTICLE.

1.     Each Donee's withdrawal right shall be exercisable (a) only by an instrument in writing specifically referring to this power, (b) on a non-cumulative basis from one calendar year to another and (c) at any time or times during the thirty (30) day period after the Trustees have notified the Donees of their respective withdrawal rights (if any).

2.     Notwithstanding anything to the contrary in this Trust Agreement, during any period in which a Donee has a withdrawal right, no right or power of the Trustees or any other person, including, but not limited to, the right or power to request or receive distributions of income

EXHIBIT " A " PG 11 OF 34

Hamblen Family Irrevocable Trust (396.02)

or corpus, shall preclude the exercise of any withdrawal right by a Donee in accordance with the terms of this ARTICLE.

D.     Promptly after each Addition to the Trust, the Trustees shall notify the Donees who have withdrawal rights with respect to such Addition that such Addition has been made and the amounts of the Donees' respective withdrawal rights; provided, however, the Trustees shall not be required to notify any Donee (or the guardian or legal representative of such Donee) who is also a Trustee and who has received actual notice of such Addition by serving in such capacity. If at the time of an Addition a Donee shall not have attained the legal age of majority or otherwise shall lack legal capacity, then such Donee's withdrawal right with respect to his or her Distributive Share of such Addition may be exercised by the guardian or legal representative (other than a Donor or a Grantor) of such Donee on behalf of such Donee; provided however, if the only such guardian or legal representative is a Donor or a Grantor, then the individual (other than a Donor or a Grantor) then serving as a Trustee under this Trust Agreement, or if none, any individual (other than a Donor or a Grantor) named as successor Trustee under this Trust Agreement, in such individual's individual, non-fiduciary capacity, may make such demand on the Donee's behalf. Any Donee electing not to exercise his or her withdrawal right under this ARTICLE may so notify the Trustees by an instrument in writing delivered to the Trustees. If said withdrawal right is not exercised by any Donee in accordance with the provisions of this ARTICLE, the property subject to such right shall continue to be a part of the corpus of the Trust. Promptly upon the receipt of an instrument of withdrawal from any Donee (or his or her guardian or legal representative), the Trustees shall distribute to such Donee from the corpus of the Trust that amount of such Donee's Distributive Share of any Additions to the Trust requested pursuant to this ARTICLE. Such distribution may be made

in cash or with any other property of the Trust, including, but not limited to, one or more undivided

ownership interests in life insurance policies. Even if any such instrument of withdrawal is received

by the Trustees on the 31st day of December in any year, the Trustees shall that same day make the

distribution so requested.

## ARTICLE VII.

A.      In the event there is a change in applicable tax law such that MICHAEL ROSS of

Alpharetta, Georgia, or if such individual is unable or unwilling to serve, then LAWRENCE H.

FREIMAN of Marietta, Georgia (MICHAEL or LARRY, as the case may be, shall hereinafter be

referred to as the "Trust Protector"), in such individual's sole discretion, believes the aforesaid tax

purposes are not attainable under the terms hereof, then the Trust Protector is expressly authorized

to amend the provisions of this Trust Agreement to effectuate the aforesaid purposes by written

instrument delivered to the Trustees or filed with the Probate Court which would have jurisdiction

over the Will of either Grantor were that Grantor to be deceased at the time of such amendment,

including any amendments which may be necessary to satisfy changes to the Code, the Treasury

Regulations promulgated thereunder or applicable tax law generally. Said power to amend this Trust

Agreement shall be exercisable by the Trust Protector, in such individual's personal capacity and not

in a fiduciary capacity, and at no time shall the Trust Protector be under any obligation to amend this

Trust Agreement. This non-fiduciary, discretionary power of amendment shall not be subject to

judicial review or any other legal, moral or ethical scrutiny.

B.      Notwithstanding anything to the contrary in this Trust Agreement, until the death of

the Surviving Grantor, the Trust Protector shall have the power, exercisable in such individual's

personal capacity and not in a fiduciary capacity, to direct the Trustees to terminate this Trust

Hamblen Family Irrevocable Trust (396.02)

Agreement and cause the Trustees to distribute all or any part of the remaining corpus and undistributed income of the Trust fund to or among any or all of the Grantors' descendants. The Trust Protector shall have the power to direct the Trustees to terminate this Trust Agreement if the Trust Protector determines, in the Trust Protector's sole and absolute discretion, that the continuance of this Trust Agreement would be administratively unfeasible, or if for any other reason the Trust Protector believes it to be in the best interests of the Grantors' descendants to distribute the assets of the Trust fund to such individual or individuals. At no time shall the Trust Protector be under any obligation to direct the Trustees to terminate this Trust Agreement. This non-fiduciary, discretionary power of termination shall not be subject to judicial review or any other legal, moral or ethical scrutiny.

## ARTICLE VIII.

A.      Except as may be otherwise expressly provided herein, the interest of any beneficiary in the income or corpus of any Trust created hereunder shall not be subject to assignment, alienation, pledge, attachment or claims of creditors and may not otherwise be voluntarily or involuntarily alienated or encumbered by such beneficiary.

B.      If any Trust created hereunder shall violate any applicable rule against perpetuities, accumulations or any similar rule or law, such Trust shall terminate on the date limited by such rule or law, and thereupon all the property held in such Trust shall be distributed to the then income beneficiary thereof. No power of appointment granted hereunder shall be so exercised as to violate any such applicable rule or law, and any attempted exercise of any such power which violates same shall be void, notwithstanding any provisions of this Trust to the contrary.

EXHIBIT " A " PG 14 OF 34

C.      Use of pronouns in any form wherever they appear in this Trust Agreement shall be read as either masculine, feminine or neuter, and either singular or plural, whenever the context and facts permit that construction.

D.      If any provision of this Trust Agreement shall be unenforceable, the remaining provisions shall nevertheless be carried into effect.

E.      If any property from any Trust created hereunder is to be distributed to or requested by a beneficiary who has not attained the legal age of majority, then such distribution or such request shall be made to or by the guardian or legal representative of such beneficiary (other than the Grantors).

## ARTICLE IX.

A.      If any trust created under this Trust Agreement (the "original trust") would otherwise have an "inclusion ratio" (as defined in Code Section 2642(a)(1)) of neither one (1) nor zero (0) for purposes of the generation-skipping transfer tax (the "GST Tax") after the proper and timely allocation to such trust of all or any portion of either Grantor's or any other person's exemption from GST Tax provided under Code Section 2631 or under any applicable state law (the "GST Exemption"), then, before such allocation and as of the relevant valuation date under Code Section 2642 with respect to such allocation, the Trustees may (but need not), without obtaining the approval of any court, instead create separate trusts of equal or unequal value so that the allocation of such Grantor's or any other person's GST Exemption can be made to one or more trusts so the inclusion ratio of each trust to which GST Exemption is allocated will be zero (0). If the separate trusts so created would otherwise have been administered as a single trust under a particular ARTICLE or certain Paragraphs of this Trust Agreement, then the terms of such separate trusts shall

Hamblen Family Irrevocable Trust (396.02)

be identical in all respects to the original trust except that GST Exemption shall have been allocated to one or more of such trusts and not to others, and such separate trusts are sometimes referred to herein as "related trusts." Such related trusts shall have the same name as the original trust except that the trust or trusts to which a Grantor's or another person's GST Exemption is allocated shall have the phrase "GST Exempt" added to its or their name.

B.      If any property which is held in, or is to be added or allocated to, a trust pursuant to this Trust Agreement is, for any reason for the purposes of the GST Tax, subject to different treatment from the treatment of any other property which is held in, or is to be added or allocated to such trust, then the Trustees may (but need not), without the approval of any court, hold such property instead as a separate trust or trusts appropriately designated to distinguish it or them from the trust with respect to which the property otherwise would have been held, added or allocated, but that is identical in all other respects to such trust. The identical trusts resulting from the application of this Paragraph are also sometimes referred to herein as "related."

C.      If any single trust is otherwise divided by the Trustees into separate trusts pursuant to Paragraph A or B of this ARTICLE or any other provision of this Trust Agreement, the Trustees may (i) make different tax elections (including the allocation of any of a Grantor's remaining GST Exemption) with respect to each separate trust, (ii) expend principal and exercise or not exercise any other discretionary powers with respect to such separate trusts differently, (iii) invest such separate trusts differently, and (iv) take all other actions consistent with such trusts being separate entities.

D.      It is the Grantors' intent that the Trustees shall not be required to create or administer a trust hereunder that is only partially exempt from the GST Tax, or to commingle property subject to different treatment for GST Tax purposes for any reason. The provisions of this ARTICLE are



EXHIBIT " A " PG 16- 16 OF 34        Hamblen Family Irrevocable Trust (396.02)

intended to enable the Trustees to avoid such situations by empowering the Trustees to segregate trust property (i) that is entirely exempt from the GST Tax from trust property that is not exempt from the GST Tax, or (ii) that is otherwise treated differently from other trust property for purposes of the GST Tax, and the provisions of this ARTICLE should be applied in a manner consistent with this intention.

E.    To the extent that it is consistent with the Trustees' fiduciary obligations, the Trustees, in making discretionary distributions of net income and principal from related trusts created under this Trust Agreement, shall take advantage of the opportunities provided by the creation of such related trusts to avoid or delay the imposition of the GST Tax when making discretionary distributions, and to maximize the amount of trust property that eventually may be distributed to the Grantors' lineal descendants without transfer tax of any kind at the termination of all trusts created under this Trust Agreement.

F.    In satisfying a withdrawal request by a beneficiary relating to the principal of two or more related trusts created under this Trust Agreement, the amount subject to withdrawal shall be determined with reference to the aggregate principal of those related trusts, but the Trustees may, in their sole and absolute discretion, satisfy the amount withdrawn in full or in part from either or both of such related trusts.

## ARTICLE X.

A.    LONNA HARRIS and SARA ANN JONES SMITH, are hereby appointed to serve together as Co-Trustees of any trust created hereunder.  If LONNA shall fail, cease or otherwise be unable or unwilling to continue to serve as a Trustee of any trust created hereunder, then CHARLES HAMBLEN shall serve in her place and stead as a Trustee of such trust along with the then serving

-17-

Hamblen Family Irrevocable Trust (396.02)



Trustee or alone if there is no other then serving Trustee of such trust. If SARA shall fail, cease or otherwise be unable or unwilling to continue to serve as a Trustee of any trust created hereunder, then WALTER T. SMITH shall serve in her place and stead as a Trustee of such trust along with the then serving Trustee or alone if there is no other then serving Trustee of such trust. Either of LONNA or SARA may serve alone if there is no other then serving Trustee of such trust.

B.     If at any time there is no Trustee then serving as to a particular trust created hereunder, a majority of the adult beneficiaries entitled to receive income distributions from such trust and the guardians or legal representatives (other than the Grantors) of any minor beneficiaries entitled to receive income distributions from such trust (hereinafter collectively referred to as the "Income Beneficiaries") shall have the power, exercisable at any time or times, by an instrument in writing specifically referring to this power, to appoint a trust company or financial institution with trust powers (hereinafter referred to as a "Corporate Trustee") and/or an individual or individuals (other than the Grantors or an individual who is defined as a "Related or Subordinate Party" within the meaning of Code Section 672(c)) to serve as the Trustee(s) of such trust.

C.     A majority of the Income Beneficiaries of any trust created hereunder shall have the power, exercisable at any time or times, by an instrument in writing specifically referring to this power, to remove any then serving Corporate Trustee of such trust and in its place appoint another Corporate Trustee and/or an individual or individuals (other than the Grantors or a Related or Subordinate Party) to serve as Trustee(s) of such trust.

D.     Any Corporate Trustee serving hereunder shall have trust assets under management of at least Five Hundred Million ($500,000,000) Dollars.

Hamblen Family Irrevocable Trust (396.02)

EXHIBIT " A " PG 18 OF 34

E.    The appointment of any Corporate Trustee hereunder shall be deemed to include any bank or trust company into which such Corporate Trustee may hereafter be merged or consolidated.

F.    If at any time more than two Trustees are serving as to any trust created hereunder, all actions and decisions taken and made by such Trustees shall be taken and made by majority vote.

G.    No individual Trustee shall have the right to vote on or in any manner participate in a decision to make a discretionary distribution or allotment of the income or corpus of any trust fund created hereunder (i) to or for his or her benefit, unless such distribution is pursuant to an ascertainable standard as defined in the Treasury Regulations promulgated under Code Sections 2041 and 2514, or (ii) in lieu of or to discharge any personal legal obligation of support such Trustee may have to any individual. If, pursuant to this Paragraph, any individual Trustee(s) shall be excluded from exercising a particular power over any trust created hereunder, then any other then serving Trustee(s) capable of exercising any such power shall be entitled to exercise such powers, or, if there exists no other Trustee(s) who are capable of exercising any such power, then the next named or designated successor Trustee(s) of such trust shall hold and be entitled to exercise such power subject to the provisions of this Paragraph.

H.    Except as may be otherwise agreed upon, any individual Trustee shall receive compensation for his or her services not to exceed a reasonable hourly rate for all time expended in discharging his or her obligations hereunder, and any then serving Corporate Trustee shall receive compensation for its services in accordance with its schedule of fees in effect when such services are performed. In the sole discretion of the Trustee, such compensation may be charged currently or deferred.



I.      Any Trustee may renounce the appointment by giving written notice or may resign by giving thirty (30) days' prior written notice to the beneficiaries then entitled to receive income distributions from any trust estate created hereunder or to the natural or legal guardian of such beneficiary, as well as to any other Trustee then serving.

J.      No successor Trustee shall be liable or responsible in any way for any acts or defaults of any predecessor Trustee, or for any loss or expense caused by anything done or neglected to be done by any predecessor Trustee, but such successor Trustee shall be liable for his or her own acts and defaults with respect to the property actually received by him or her as Trustee.

K.      No successor Trustee shall be required to inquire into or audit the acts or doings of any predecessor Trustee or to make any claim against any such predecessor Trustee or his or her estate.

L.      Any successor Trustee qualified and acting hereunder shall have all the title, privileges, powers, exemptions and duties of the original Trustee.

M.      The Trustees shall keep records, showing all disbursements, charges for commissions, receipts of income and corpus, and all investments and changes of investments.  These records shall be open for inspection at all reasonable times to the income beneficiaries and beneficiaries with vested remainder interests, or their guardians.  Upon request, the Trustees shall render not more frequently than annually a statement to the income beneficiaries and beneficiaries with vested remainder interests showing the condition of the trusts hereunder and the receipts and disbursements during the preceding fiscal year.  Acceptance of such account by any proper party having an interest therein shall act as a complete discharge of the Trustee(s) as to such party as to all the matters shown by said accounting, as fully, to all intents and purposes, as a final decree of a court of competent

Hamblen Family Irrevocable Trust (396.02)

EXHIBIT " A " PG 20 OF 34

jurisdiction, and such party having an interest therein shall be bound thereby. The foregoing shall not, however, preclude the Trustees from having their acts judicially settled, if the Trustees shall so desire.

N.      Any power and right granted to the Trustees may be exercised by the Trustees without posting any bond, without obtaining any order from or the approval of any court, without any notice to or consent of anyone, and the Trustees shall not be required to make any inventory, appraisement, return or report to any court at any time or for any purpose.

O.      Any reference in this Trust Agreement to the word "Trustee" or "Trustees" shall also include the singular or plural thereof and vice-versa and any successor thereto and shall be read as either masculine, feminine or neuter whenever the context and facts permit such construction.

P.      Any individual Trustee holding any power under the terms of this Trust Agreement may, in the discretion of such individual Trustee, release such power insofar as such individual Trustee is concerned either in whole or in part, by written instrument duly executed and acknowledged by such individual, whereupon such power shall no longer exist respecting such individual Trustee.

Q.      Any individual Trustee may delegate any powers and discretion with respect to any trust created under this Trust Agreement to any then serving Co-Trustee, if there is one, as managing Trustee to act until the delegation is revoked. Any act done or instruments executed by the managing Trustee shall have the same effect as if it were done or executed by all of the Trustees and may be so considered by any person dealing with the Trustees.

EXHIBIT " A " PG 21 OF 34

Hamblen Family Irrevocable Trust (396.02)

## ARTICLE XI.

A.      The Trustees of each trust created hereunder and their successors and survivors in office shall have those privileges, powers, exemptions and duties (collectively, the "Powers") specifically provided under Section 53-12-232 of the Official Code of Georgia Annotated, as the same may now or hereafter be amended, which Powers are expressly incorporated herein by this reference.  In addition, the Trustees shall have the powers, authority and discretion hereinafter set forth:

1.      To sell or exchange Trust property at public or private sale, for cash or upon terms, with or without advertisement.

2.      To maintain, repair, rebuild, improve or lease (as lessor or lessee) any real estate and to grant or receive options to purchase property; and a lease or option may be made for a term that may extend beyond the term of any trust created hereunder; to insure any such real estate against fire or other risk; and to subdivide real estate, to dedicate same to public use and to grant easements as they may deem proper.

3.      To exercise any options, rights and privileges with respect to any stocks, bonds, debentures, notes, mortgages, partnership interests, membership interests and other similar property; to convert such property into similar property; to subscribe for additional property and to hold any such property so acquired as investments of any trust created hereunder so long as the Trustees shall deem advisable.

4.      To retain any property owned by any trust created hereunder, including any stock or ownership interests in any Corporate Trustee serving hereunder, to invest and reinvest in stocks whether common, preferred or otherwise, bonds, loans, securities, partnership interests, membership interests or other property, real or personal, taxable or tax-exempt or in any common trust fund of any Corporate Trustee serving hereunder, without regard to any statute or rule of law now or hereafter in force limiting the class of investments and without liability for failure to diversify investments; and to register any securities in their own names, or in their names as Trustees, or in the names of nominees, with or without indicating the fiduciary character of such investments and to hold uninvested any moneys as they may deem proper and for such periods as they may deem expedient, all without any obligation to diversify, it being the Grantors' intention to give the Trustees the same power of investment and reinvestment which the Grantors possess with respect to the Grantors' own funds.

5.      To hold any monies in cash or to deposit the same in any bank organized under the laws of any state or of this or any foreign country, regardless of whether such monies may earn interest, for such periods of time as they alone may deem advisable.



-22-

Hamblen Family Irrevocable Trust (396.02)

6.    To foreclose, as an incident to the collection of any bond, note or other obligation, any mortgage, deed of trust, or other lien securing such bond, note or other obligation, and to bid in the property at such foreclosure sale or to acquire the property by deed from the mortgagor or obligor without foreclosure, and to retain the property so bid in or taken over without foreclosure.

7.    To borrow with or without security for the protection, preservation or improvement of any trust property or any other purpose that the Trustees may deem proper, including the power to borrow from any Corporate Trustee serving hereunder upon reasonable terms, and to secure such indebtedness by pledging or conveying any property by trust or loan deed, or otherwise.

8.    To vote stock or other ownership interests by themselves or by proxy, to deposit securities with and transfer title to committees representing security holders and to participate in voting trusts, reorganizations and other transactions involving the common interest of security holders; to enter into any plan or agreement for the sale, merger, consolidation, liquidation, recapitalization or other disposition of any trust property subject to this Trust Agreement or of any corporation or entity issuing securities held as part of the any trust created hereunder and to accept in such transactions any cash, securities or property that the Trustees may deem proper.

9.    To operate and continue any and all businesses, including proprietorships, corporations, partnerships and limited liability companies in which the Grantors may have an interest; to liquidate or join in the liquidation of any such businesses; to sell or otherwise dispose of the same as going concerns, to incorporate or organize or cause to be incorporated or organized such businesses, to invest in any businesses so incorporated or organized as they shall see fit and to retain stock or other ownership interests in any such businesses without liability for depreciation in value; to become or remain a general or limited partner in any new or continuing partnerships or a member or manager for any new or continuing limited liability company and to take such other action as they may deem necessary or proper for the purpose of beginning or continuing the operation or liquidation of such businesses; to employ agents and others (and officers of any Corporate Trustee serving hereunder shall be authorized to serve as directors or officers or in other capacities for any such businesses) and to authorize them to manage and operate such businesses, without liability for any of their actions or for any losses or liabilities of the businesses if the management is selected or retained with reasonable care; to pay any such agent or other person (including any Trustees hereunder serving as any such officer) such reasonable additional compensation by the businesses or by any trust created hereunder, or a combination thereof as is commensurate with the time, effort, and responsibility assumed by them in the management and operation of such businesses; and to determine whether the liabilities incurred in the conduct of the businesses are to be chargeable to all or any part of any trusts set aside for use in the business.

10.    To receive and accept any gift, devise or bequest from any other person, and any property, assets and funds so received shall be treated as a part of the original corpus of the particular trust fund designated by such donor or testator.

11.    Except as otherwise provided in this Agreement, to acquire, purchase and hold as an investment of this Trust or any trust created hereunder a policy or policies of insurance

-23-

Hamblen Family Irrevocable Trust (396.02)

on the lives of the Grantors and/or any beneficiary or on the life of any person in whom any beneficiary shall have an insurable interest, naming either a beneficiary or beneficiaries of any trust created hereunder or the Trustees, as the beneficiary under such policies; to receive such policies as gifts; and to hold and deal with them as the owner thereof; and to be subject to the following additional terms, conditions and provisions with respect to insurance policies.

a)    The sole responsibilities of the Trustees with respect to one or more policies of the life insurance held by this Trust or any trust created hereunder are to hold such policies in safekeeping and to take all measures reasonably available to them to keep such policies in force, first by timely payment of premiums and charges from income and/or corpus of this Trust or any trust created hereunder or to the extent that such funds are not available from this Trust or any trust created hereunder, through the exercise of options within such policies to the extent that such options are available, including by way of illustration and not limitation, by (i) using any automatic premium loan feature, (ii) borrowing against any policy cash reserves (whether or not against the same policy for which premium or charges shall be paid), and/or (iii) electing any automatic nonforfeiture feature.

b)    The standard of investment responsibility by which the Trustees' performance shall be measured with respect to life insurance policies is whether they acted prudently in taking the actions necessary and reasonably available to them to keep the policies in force. The Trustees shall not be liable for failing to diversify any life insurance policies owned by the Trust or any trust created hereunder, nor shall they be required to (i) use their own funds to keep a policy in force, (ii) monitor the continuing financial condition of the chosen insurance carrier(s), or (iii) evaluate the chosen policies against other available policies or other available investments. Except to the extent that there are available cash assets in this Trust or any trust created hereunder (including cash values of all life insurance policies owned by the Trustees), the Trustees shall be under no obligation to pay premiums on any life insurance policies owned by the Trustees.

c)    The Trustees shall have and, in their sole discretion, may exercise all of the incidents of ownership in each and every policy of life insurance which may at any time be owned or purchased by this Trust or any trust created hereunder. The term "incidents of ownership" with respect to an insurance policy shall include but not be limited to the right to collect, receive and retain all payments of dividends, surrender values, sickness, accident, disability, retirement or other benefits, including all death benefits, maturing on such policy during the insured's lifetime and thereafter, as well as the right at any time to transfer, assign, sell, pledge, hypothecate, borrow on, surrender, prepay, convert, divide, change the beneficiary of, and/or exercise or select any options, elections, and waivers with respect to such policy.

d)    The Trustees may, in their sole discretion, exercise the incidents of ownership related to obtaining policy loans from or against the cash value of each and every policy of life insurance which may at any time be owned or purchased by this Trust or any trust created hereunder, and the Trustees may distribute the proceeds of said policy loans to or for the benefit of the beneficiaries hereunder as corpus of this Trust or any trust created hereunder in accordance with the standards of distribution set forth hereunder. It is anticipated and understood by the Grantors that policy loan distributions will be offset against future death benefits from the respective life insurance

Hamblen Family Irrevocable Trust (396.02)

EXHIBIT " A " PG 24 OF 34

policy to which they relate and that recipient beneficiaries of the proceeds of said policy loans shall not be required to reimburse this Trust or any trust created hereunder for any amount so borrowed or distributed.

e)    If any insurance on the life of a beneficiary of this Trust or any trust created hereunder is an asset thereof, such insurance and all proceeds thereof shall be excluded from the assets which might otherwise be subject to any use, enjoyment, withdrawal or appointment by that beneficiary (and on such beneficiary's death, such proceeds shall be disposed of as though any power of appointment held by such beneficiary had not been exercised).

f)    Upon the death of any insured beneficiary hereunder, and upon receipt by the Trustees of actual notice of the death of such beneficiary or upon earlier maturity of any insurance policy or policies which are part of the Trust estate, the Trustees shall take all necessary steps to collect the proceeds of such insurance policy or policies, including double indemnity benefits if they are payable. To facilitate the prompt collection of such sums, the Trustees shall furnish the necessary proofs of death to the respective insurance companies and shall be authorized and empowered to do any and all things which, in the Trustees' discretion, is deemed necessary and proper to collect such proceeds.

12.    To receive and accept the proceeds of any life insurance policy which may be payable to the Trustees and to treat the proceeds thereof as a part of the original corpus of any trust created hereunder; and the receipt by the Trustees of the proceeds of any such insurance policy shall constitute a complete, conclusive and final release of the insurance company from any further liability upon such life insurance policy and such insurance company shall have no obligation to inquire into the application of such proceeds by the Trustees.

13.    To sell property at a public or private sale to any other trust created by the Grantors during their lifetimes or by Will for a consideration equal to the then fair market value of the property sold, notwithstanding the Trustees may be the trustees of the purchasing trust; to purchase property at a public or private sale from any other trust created by the Grantors during their lifetimes or by Will with property from any trust created hereunder for a consideration equal to the then fair market value of the property purchased, notwithstanding the Trustees may be the trustees of the selling trust.

14.    To employ agents, real estate brokers, auditors, attorneys, accountants or other expert assistants and to pay them a reasonable compensation from trust funds for their services.

15.    To compromise, settle or abandon any and all claims for or against any trust established hereunder; and to rescind or modify any contract affecting any trust established hereunder, all in such manner and upon such terms as the Trustees deem best.

16.    To execute and deliver any written instruments which the Trustees may deem advisable to carry out any powers granted to them. All persons shall be fully protected in relying upon the power of the Trustees to execute every such instrument and no one shall be obligated to see

-25-                                        Hamblen Family Irrevocable Trust (396.02)

to the application by the Trustees of any money or property received by them pursuant to the execution and delivery of any such instrument.

17.    To make any division of any trust created hereunder or any distribution of any income or corpus thereof in cash or in kind, including any undivided interest therein. Such division or distribution may be made regardless of the income tax consequences to any beneficiary and even though it may be advantageous to one beneficiary and disadvantageous to another. Furthermore, the Trustees' judgment as to the propriety or relative value of any division or distribution and as to the interest of any beneficiary in any trust asset, shall be final and conclusive upon all persons interested in any trust created hereunder.

18.    To be fully protected when disposing of any portion of any trust created hereunder, in relying upon an instrument purporting to be the last Will of any beneficiary of any such Trust, if such instrument shall have been admitted to probate and is valid according to the law of the domicile of such beneficiary, or in acting upon the assumption that such beneficiary shall have died intestate if the Trustees shall have no notice of the existence of such beneficiary's Will within three (3) months after such beneficiary's death.

19.    To make payment, in the sole discretion of the Trustees, in any one or more of the following ways during the minority or physical or mental incapacity of any beneficiary to whom income or corpus from any trust created hereunder may be paid:  (a) to such beneficiary directly; (b) to the guardian, committee, conservator, or other similar official of such beneficiary; (c) to a relative of such beneficiary to be expended by such relative for the education and maintenance in health and reasonable comfort of such beneficiary; (d) by the Trustees expending the same directly for the education and maintenance in health and reasonable comfort of such beneficiary; or (e) to a custodian (either existing or one to be named by the Trustees, in their sole discretion) for the benefit of such beneficiary created under and governed by the Georgia Transfers to Minors Act or any similar law of the state where the Trustees are located or where such beneficiary resides, if not Georgia. The Trustees' determination of the minority or incapacity of any beneficiary shall be final, and the Trustees shall not be responsible for the application of any payment after the same has been made to any person in accordance with the provisions hereof.

20.    To determine in the Trustees' sole discretion what is income or corpus of any trust created hereunder and to allocate all receipts, credits, disbursements, expenses and charges to income or corpus as the Trustees shall deem proper; provided, that any amounts received in cash or in kind from any "regulated investment company," as defined in the Code that are designated in any way as capital gain dividends or as a return of capital by such company shall be added to the corpus of any trust created hereunder. To reasonably determine whether or not amounts paid as premiums on the purchase of securities or other property shall be amortized, whether reserves for depreciation, depletion, obsolescence or other amortization shall be established and whether any account shall be taken of discounts. In the Trustees' discretion, to set up proper and reasonable reserves for taxes, assessments, insurance premiums, depreciation, depletion, obsolescence, amortization, repairs, improvements, and general maintenance of buildings or other income received.

Hamblen Family Irrevocable Trust (396.02)

21.      To select an annual accounting period for any trust created hereunder; to pay taxes, assessments, compensation of the Trustees and other expenses incurred in the collection, care, administration and protection of any trust created hereunder; to have the sole and absolute discretion to exercise any rights of election available under or in respect to any tax law, even though the result of such election may be advantageous to one beneficiary and disadvantageous to another, including but not limited to the following situations in which the Trustees may exercise their discretion: (a) to determine for income tax purposes whether an expense incurred upon the sale of property shall be claimed as a deduction or used to offset the amount of the sales price; and (b) to file income or other tax returns jointly with any other persons and to pay any tax or collect any refund relative to any such returns; and in connection with the foregoing rights of election, to make no adjustments between the income account and the corpus account of any trust created by the Grantors hereunder or during their lifetimes as a result of any disproportionate or inequitable consequence to the beneficiaries thereof arising from the Trustees' exercise of any such rights of election.

22.      To purchase property of any kind from the estate of either Grantor at such prices and upon such terms as the Trustees may, in their sole and absolute discretion, determine, and to lend to such estate such sums, upon such terms and security as may seem advisable to the Trustees, without liability for any loss resulting from any such sale or loan.

23.      If either or both of the Grantors' Executors shall receive for distribution from either or both of the Grantors' estates any stock ("Subchapter S Stock") of any corporation which has elected to be treated for federal income tax purposes as an "S Corporation" pursuant to Code Section 1362, and either or both of the Grantors' Wills provide that the Subchapter S Stock is to be distributed to a trust which by its terms qualifies as a Qualified Subchapter S Trust ("QSST") pursuant to Code Section 1361(d), then the Grantors request that the Income Beneficiary of such trust, or his legal representative in the case of a person otherwise without legal capacity, timely file the applicable election to treat such trust as a QSST pursuant to Code Section 1361(d)(2). If the Trustees determine in their sole and absolute discretion that the Income Beneficiary of such trust (or his or her legal representative) has not timely filed or is not likely to timely file an election under Code Section 1361(d)(2) to qualify such trust as a QSST, then the Grantors direct that the Trustees of such trust timely file an election to treat such trust as an Electing Small Business Trust ("ESBT") pursuant to Code Section 1361(e). The Trustees shall have the power to join with the other shareholders of such S Corporation, the stock of which is then held in trust hereunder, or the sole power if the Trustees are the sole shareholders of such S Corporation, to consent or continue to consent to an election under Code Section 1362 to have or continue to have such corporation treated as an S Corporation for federal income tax purposes.

24.      To maintain the S election of any ESBT created hereunder, at no time shall the maximum number of Code Section 1361(e)(2) "potential current beneficiaries" ("PCBs") of any ESBT created hereunder, plus the PCBs of all other ESBTs owning shares of stock of such S Corporation as well as all other shareholders of such S Corporation, exceed the Code Section 1361(b)(1)(A) statutory limit for the maximum number of S Corporation shareholders. The Trustees shall have the power to limit the number of PCBs of any one or more ESBTs created hereunder if the number of PCBs of any one or more ESBTs created hereunder, together with the number of PCBs of all other ESBTs owning shares of stock of such S Corporation as well as all other

Hamblen Family Irrevocable Trust (396.02)

shareholders of such S Corporation, would exceed the Code Section 1361(b)(1)(A) statutory limit for the maximum number of shareholders. To implement the preceding sentence, (a) only that number of individuals who could be PCBs of any one or more ESBTs created hereunder without the Code Section 1361(b)(1)(A) S Corporation shareholder limitation otherwise being exceeded (inclusive of all other individuals who would be counted in such shareholder limitation), shall be PCBs under such particular ESBT hereunder, and (b) of the number of individuals determined pursuant to (a) above, only those individuals determined in the order in which each of them is first eligible as of a particular point in time, shall be the PCBs under that particular ESBT hereunder. Thus, if the maximum limit of Code Section 1361(b)(1)(A) would otherwise be exceeded, then upon the death of one PCB of a particular ESBT referenced herein, another individual who is eligible to become a PCB of such ESBT shall take such individual's place as a PCB of such ESBT so that at any one time the maximum number of PCBs under any one or more ESBTs created hereunder, together with the PCBs of all other ESBTs owning shares of stock of such S Corporation as well as all other shareholders of such S Corporation, shall not exceed the then maximum number of allowable shareholders of an S Corporation under Code Section 1361(b)(1)(A) as in effect from time to time.

25. If at any time the Trustees then acting as Trustees of any of the trusts created hereunder shall also be acting as trustees of any other trust created by either Grantor during his or her lifetime or by Will, for the benefit of the same persons who are beneficiaries under the trusts created hereunder, which in the opinion of the Trustees, is on substantially the same trusts, terms and conditions as those set forth herein, the Trustees are expressly authorized and empowered, if in their sole discretion they deem such action desirable, to transfer and merge all of the assets held under the trusts created hereunder to and with such other trust, and thereupon to terminate the trusts created hereunder as separate entities. The Trustees are further expressly authorized and empowered to accept, add to, retain and administer as a part of any trust created hereunder, on the trusts, terms and conditions set forth herein the assets of any other trust created by either Grantor during his or her lifetime or by Will, which may at any time hereafter be transferred to the Trustees hereunder by the trustees of such other trust, pursuant to the powers and authorities given the trustees of such other trust by the instrument creating such trust.

26. To exercise all power and authority after the termination of the trusts created hereunder until the same is fully distributed.

27. To pay from any or all of the trusts created hereunder all charges which the Trustees deem necessary or appropriate to comply with laws regulating environmental conditions and to remedy or ameliorate any such conditions which the Trustees determine adversely affect such trusts or otherwise are liabilities of such trusts, and to pay any liabilities, fines or penalties incurred by the Trustees, either in their fiduciary capacity or personally, on account of such conditions arising out of the performance of their duties hereunder, other than any such charges which are directly caused by their own gross negligence or willful misconduct, and to apportion all of such charges among the several trusts created hereunder and the interests of the beneficiaries therein in such manner as the Trustees deem fair, prudent and equitable under all of the circumstances.

Hamblen Family Irrevocable Trust (396.02)

EXHIBIT " A " PG 28 OF 34

B.      It is not the intention of the Grantors that the assets of any trust created hereunder shall be conserved for the benefit of remaindermen.  On the contrary, the Grantors' primary purpose in creating the Trust is to provide for the beneficiaries identified in ARTICLE IV hereof.  The rights and interests of remaindermen are subordinate and incidental to that purpose.  Therefore, the Trustees, in exercising their discretion as to whether to make distributions of income or corpus to or for the benefit of a beneficiary of one of the trusts established and maintained pursuant to ARTICLE IV hereof for such beneficiary's maintenance in health and reasonable comfort, shall take into consideration the standard of living to which the beneficiary was accustomed at the commencement of such trust and all other income and resources available to the beneficiary for such purposes from all sources known to the Trustees, together with any other factors which the Trustees may deem pertinent.  It is also the Grantors' intention in granting the Trustees discretion to make distributions for the education of a beneficiary, which shall include, but not be limited to, attendance at elementary, junior high, middle, secondary, vocational, college, graduate and/or professional schools, whether public or private, that the Trustees should do all things necessary to assure such beneficiary a reasonable education.  Such expenditures shall include, but not be limited to, expenditures for tuition, books, lodging, food and a reasonable allowance.  However, the failure of any such beneficiary to apply himself or herself to his or her studies, as evidenced by failure to attain passing grades, shall constitute sufficient cause for the refusal on the part of the Trustees to authorize further advancements from income or corpus on account of education.

C.      All rights and powers herein granted to the Trustees shall be subject to the following specific limitations:

Hamblen Family Irrevocable Trust (396.02)

EXHIBIT " A " PG 29 OF 34

1.    The administrative control of the income and principal of the trust estate herein granted to the Trustees shall never be exercised for the benefit of either Grantor or any spouse of either Grantor. The administrative control and powers of the Trustees shall always be exercised for the sole and exclusive benefit and advantage of the Donees and the then current beneficiaries of Trusts created hereunder.

2.    The Trustees shall not purchase, exchange or otherwise deal with or dispose of any property in the Trusts for less than an adequate and full consideration in money or money's worth, or enable either Grantor or any spouse of either Grantor to borrow any property in the trusts directly or indirectly without adequate interest and security. Neither of the Grantors nor any spouse of either Grantor shall have the power to reacquire any property in the Trusts by substituting other property of an equivalent value.

3.    Notwithstanding the powers granted to the Trustees herein, the trust estate created hereunder has not been established nor can it be applied to discharge any legal obligation of support either Grantor or any spouse of either Grantor may have to any beneficiary. Any amounts distributed from any trust created hereunder to or for any beneficiary are not intended to be, and shall not be made, in lieu of or in discharge of any obligation either Grantor or any spouse of either Grantor may have for support.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Hamblen Family Irrevocable Trust (396.02)

EXHIBIT " A " PG 30 OF 34

IN WITNESS WHEREOF, the undersigned has hereunto set his or her hand and seal on this

counterpart signature page as of the day and year so indicated, and each of such counterparts shall

constitute one and the same instrument.

As to CHARLES RANDALL HAMBLEN,
as Grantor, sworn to, signed, sealed and
delivered this /5ᵗ day of September 1999,
in the presence of:

_____ (SEAL)
CHARLES RANDALL HAMBLEN,
Grantor

_____
Witness

_____
Notary Public, State of Georgia at Large

[SIGNATURES CONTINUED ON NEXT PAGE]

Hamblen Family Irrevocable Trust (396.02)

[SIGNATURES CONTINUED FROM PREVIOUS PAGE]

IN WITNESS WHEREOF, the undersigned has hereunto set his or her hand and seal on this

counterpart signature page as of the day and year so indicated, and each of such counterparts shall

constitute one and the same instrument.

As to JANET HAMBLEN, as Grantor,
sworn to, signed, sealed, and delivered
this _1st_ day of _September_ 1999,
in the presence of:

_Janet Hamblen_ (SEAL)
JANET HAMBLEN, Grantor

_Michael Ross_
Witness

_Leslie E. Benham_
Notary Public, State of Georgia at Large

[SIGNATURES CONTINUED ON NEXT PAGE]

Hamblen Family Irrevocable Trust (396.02)

[SIGNATURES CONTINUED FROM PREVIOUS PAGE]

IN WITNESS WHEREOF, the undersigned has hereunto set his or her hand and seal on this

counterpart signature page as of the day and year so indicated, and each of such counterparts shall

constitute one and the same instrument.

As to LONNA HARRIS as Trustee,
sworn to, signed, sealed and delivered this 27ᵗʰ
day of Sept. , 1999, in the presence
of:

_____
LONNA HARRIS, Trustee

_____
Witness

_____
Notary Public, State of _Tennessee_
County of Shelby

[SIGNATURES CONTINUED ON NEXT PAGE]

Hamblen Family Irrevocable Trust (396.02).doc

[SIGNATURES CONTINUED FROM PREVIOUS PAGE]

IN WITNESS WHEREOF, the undersigned has hereunto set his or her hand and seal on this counterpart signature page as of the day and year so indicated, and each of such counterparts shall constitute one and the same instrument.

As to SARA ANN JONES SMITH as Trustee, sworn to, signed, sealed and delivered this 5th day of Oct , 1999, in the presence of:

_____
SARA ANN JONES SMITH, Trustee

_____
Witness

_____
Notary Public, State of _____

KARELLE LYN AHRENS
Notary Public, State of Florida
My comm. exp. Aug. 5, 2003
Comm. No. CC801113

EXHIBIT " A " PG 34 OF 34

Hamblen Family Irrevocable Trust (396.02).doc